The Chancellor.
John Timbs, by his last will and testament, bearing date on the 9th day of January, 1821, gave and devised the residue of his estate, real and personal, to his *164 step-daughter, Mary Heater, during her life, and after her decease to her children, to be divided equally among them. Mary Heater died in February, 1860. The bill in this cause is filed by one of her children, for the partition of the real estate thus devised between the children and grandchildren of the said Mary Heater, in proportion to their respective shares and interests therein, according to the terms and provisions of the will of the said John Timbs.
Two questions are raised by the pleadings upon the effect of the devise to the children of Mary Heater, viz :
1. Are her illegitimate children entitled to a share of the estate?
2. Are her grandchildren entitled to the share of their deceased parent ?
At the time of the devise and at the death of the testator Mary Heater had two illegitimate children born before her marriage with James Heater, and two legitimate children born after her marraige. After the death of the testator she had six other children born in lawful wedlock, one of whom, Sarah Casterline, died in the lifetime of her mother, leaving issue five children. Mary Heater, at her death, left surviving ing her nine children, two of whom were illegitimate, and five grandchildren, the children of a deceased daughter.
By the terms of the residuary devise, standing alone, it is clear that the illegitimate children of Mary Heater can take no interest.
Under a devise or bequest to “children,” as a class, natural children are not included, unless the testator’s intention to include them is manifest, either by express designation or necessary implication. 1 Roper on Leg. 85; 2 Jarman on Wills 129; 2 Williams on Executors 943.
All the cases cited in support of the claim of the illegitimate children will be found to fall within this principle. Illegitimate children may take under the general description of children; but it must appear unequivocally, from other parts of the will, that such was the testator’s intention. The natural and legal import of the term children is legitimate children. To overcome this presumption, and to extend or *165 alter the legal import of the term, the testator’s intention must be manifest.
The residuary clause of the will in question, under which the children of Mary Heater claim title, contains no express designation, byname or otherwise, of her illegitimate children. The testator’s intention to include them in that devise, if it exist, must appear by necessary implication from other parts of the will. Does it so appear ?
The testator, after giving to his wife the sole use of all his real estate during her life, so far as necessary for her comfortable support, gives, in the first place, to his wife’s daughter, Mary Heater and her “children,” all the residue of the profits of the real estate. He then declares it to be his will that his wife and her daughter and daughter’s “children” aforesaid shall have the management, use, and profits of all his goods and chattels during the life of his wife. By the residuary clause, the testator, after the decease of his wife, gives all the residue of his estate, both real and personal, to the said Mary Heater during 'her life, and after her decease to her “children,” to be divided equally among them. These are the only provisions in the will in favor of the children of Mary Heater, as a class, by the designation of “children.” Hone of them contain the least intimation, on the part of the testator, of an intention to enlarge the legal import of the term “children” used in the will, much less any necessary implication of such intention. If these clauses stood alone there would be no room for question. But the will contains other provisions in favor of the illegitimate children of Mary Heater, which are relied upon as furnishing evidence of an intention on the part of the testator to include them in the general designation of “children.”
After making the provisions already referred to, and giving the use of all the moneys due him to his wife during her life, the testator, after the death of his wife, gives to Mary Heater’s son John one hundred and fifty dollars, to be paid to him when he shall arrive at full ago, and to the said Mary’s second son, William, one hundred dollars, to be paid *166 to him when he shall arrive at full age; and he further orders and directs, that if his wife should die before the said John and William should arrive at the age of twenty-one, they shall have the interest of the moneys due the testator to assist them in obtaining education until they arrive at full age.
These clauses show that John and William were the reputed sons of Mary Heater, and that the testator recognised them as such; and if Mary Heater had then been unmarried, and had no legitimate children, they would have raised a strong presumption that the testator intended to include them under the general designation of children. But at the date of the will Mary Heater was a married woman and had lawful children, who fully answered the designation given to the intended objects of the testator’s bounty. In such case the mere fact that the testator has recognised the illegitimate offspring as a son or child will not entitle him to take under a devise to children. Bagley v. Mollard, 1 Russ. & M. 581; Fraser v. Pigott, 1 Younge 354.
But the provisions of this will, so far from raising a necessary implication that the testator intended by the term children to include the illegitimate children of Mary Heater, afford a strong presumption of a directly contrary intention. The testator, by the several clauses of his will, made provision for the “children” of Mary Heater as a class. These provisions, by their terms, clearly operate in favor of her legitimate children only. He then makes special provision for her two illegitimate sons by name. He gives to each a legacy payable at twenty-one, and in the event of the death of his widow before that time, makes provision for their education. He makes no special provision whatever for either of her legitimate children, who were younger, and as it would seem, in a situation more to require this peculiar provision for their protection. This marked distinction between the two classes of children indicates a discrimination in the testator’s mind bétween them, and an intention not to include the illegitimate sons under the general provisions in favor of *167 the children. It cannot be presumed that the testator intended to make the illegitimate rather than the legitimate children of Mary Heater the favorite objects of his bounty, which must be the result if they share the benefits of the residuary devise.
An attempt is made to sustain the construction in favor of the illegitmate children by extraneous evidence that the children resided in and formed members of the testator’s family. The evidence is competent for the purpose of showing that they were recognised as the reputed children of Mary Heater, but not to affect the construction of the will. The implication must appear upon the face of the will itself. Wilkinson v. Adam, 1 Ves. and B. 462; 12 Price 501; Swaim v. Kennerly, 1 Ves. and B. 469; Gardner v. Heyer, 2 Paige 11; Collins v. Hoxie, 9 Paige 81; 4 Kent's Com. 414, note e; 2 Will, on Ex’rs 943.
The cases show that extrinsic evidence, to affect the construction, is admissible only when there are no legitimate children in existence at the time of making the will to satisfy the terms of the bequest.
But admitting the competency of the evidence, it is insufficent to alter the legal import of the terms of the will. Their utmost effect is to afford ground for a plausible conjecture, not to create a clear conviction of a different intent in the mind of the testator.
II. The second question raised by the pleadings admits of no doubt. Hannah Casterline, one of the daughters of Mary Heater, was born after the death of the testator, and died prior to the death of her mother, leaving issue. Where an estate for life is carved out of the fee with a gift over to the children of the person taking the life estate, such gift will embrace not only the objects living at the death of the testator, but all such as may subsequently come into existence during the life of the tenant for life. The children, if any are living at the death of the testator, take an immediate vested interest, subject to be divested pro tanto upon the *168 birth of other children; and upon the death of any of the children during the life of the tenant for life, their shares descend to their heirs-at-law. 2 Jarman 75.
The estate, must be divided into eight equal shares, the seven surviving children of Mary Heater being each entitled to one share, and the children of Hannah Casterline, the deceased daughter, to the remaining share.