Rodenfels *v.* Schumann.

MARIA RODENFELS

*v.*

JOHN SCHUMANN et al.

A testator provided by his will as follows:

"*First.* My will and desire is that all my property, both real and personal, shall be for the sole use and benefit of my wife, Julianna, after my decease, and, in the event of her death, then what shall remain to be disposed of in the following manner, namely, the whole to be disposed of as shall to my executor or executors seem best, and the profits and proceeds thereof to be equally divided between  *  *  *  brothers and sisters of myself and my wife, Julianna."—*Held,* that the widow took the testator's estate in fee.

On bill to quiet title.

*Mr. Carl Lentz,* for the complainant.

*Mr. F. W. Stevens,* for Oscar Naundorf, one of the defendants.

THE CHANCELLOR.

By his will, dated on the 26th day of July, 1854, and admitted to probate on the 24th ·day of January, 1871, Adam Rienaker provided as follows :

"*First.* My will and desire is that all my property, both real and personal, shall be for the sole use and benefit of my wife, Julianna, after my decease, and, in the event of her death, then what shall remain to be disposed of in the following manner, namely, the whole to be disposed of as shall to my executor or executors seem best, and the profits and proceeds thereof to be equally divided between Maria Schumann, Margaretta Schumann, John Schumann, Eurich Schumann, Caspar Schumann, Bastian Rienaker and Falden Rienaker, brothers and sisters of myself and my wife, Julianna. And, lastly, I appoint Francis Kennayer and Lawrence Henninger to be my executors to carry out my wishes and desires as herein expressed."

The will was proved by Lawrence Henninger, to whom alone letters testamentary were issued. He continued to act as executor until February 24th, 1884, when he was discharged by order of the orphans court. Francis Kennayer then renounced the executorship, and the defendant, Oscar Naundorf, was appointed administrator *cum testamento annexo de bonis non.*

Prior to the 17th of July, 1876, the complainant agreed with Julianna Rienaker, the widow, to purchase the house and lot described in the bill, which was part of the estate of Adam Rienaker, and, at the time of the agreement, paid her $200 on account of the purchase-money, and afterwards, when the deeds were delivered, gave the widow a mortgage for $200 on the property sold, and paid the balance of the purchase-money, about $1,600, to the agent of Mrs. Rienaker, in the presence of Mrs. Rienaker and the executor, Henninger, and received from the agent two deeds, one from the executor, by which, for the consideration of $1,990, he assumed to convey to her the property in question, "by virtue of the power and authority to ——, given in and by said last will" &c., and the other from the widow, Julianna Rienaker, and John Schumann and Maria his wife, Johan Schumann and Anna Maria his wife, and George Schumann and Dorothea his wife, which was without covenants and for the nominal consideration of one dollar. In this deed,

in the description of the lands conveyed, it was recited that they are the same that were "devised by said Adam Rienaker, deceased, to said parties of the first part by his last will and testament" &c. It is not disclosed what interest the six persons named Schumann, who are parties to this deed, had in the property.

Julianna Rienaker died on the 18th of October, 1884.

In 1886, the defendant, Naundorf, in a suit to which the complainant herein was not a party, and which was heard *ex parte,* obtained from this court a construction of the will of Adam Rienaker. The court, in that case (*14 Stew. Eq. 14*), declared that the widow had merely the use of her husband's estate during her life, and had no power, express or implied, to dispose of the property, and that the administrator with the will annexed had no power to sell, because the power of sale contained in the will was coupled with a personal trust and confidence in the executors, and finally, that the interest of the legatees in remainder vested at the testator's death.

Subsequently, in the same suit, the defendant, Naundorf, was appointed trustee to sell the land which had been conveyed to the complainant herein.

In this posture of affairs the complainant commenced this suit by bill, in which she alleges that she is in peaceable possession of the land in question, claiming to own the same under title made by the deeds above mentioned, and that her title is disputed by Naundorf and many other persons, named, who claim in the right of the brothers and sisters of the testator and his wife, and that no suit is pending to test the validity of such title. She also alleges that, upon the faith of the sufficiency of her title, she has improved the property in question by building upon it at a cost of about $1,200. She prays that the rights of the parties in the lands may be settled and fixed, and that she may have such other relief as may be equitable. To this the defendant, Naundorf, answered, setting out the facts above stated, and insisting that the complainant is without title to the land.

In considering the complainant's title, the question which primarily presents itself, the answer to which disposes of the

case, is, whether the widow, Julianna Rienaker, had authority to sell the land at the date of her deed to Mrs. Rodenfels.

It is urged that by the words "then what shall remain," the testator's intention to give his widow authority to sell is manifested.    Of these words, in *Naundorf* v. *Schumann, 14 Stew. Eq. 15,* the chancellor said : " The testator, indeed, uses the qualifying words ' what shall remain,' but he probably used them in view of the fact that some of the personal property was of a consumable character."

The chancellor in that case distinguishes this will from those which are treated of in the cases of which *Annin* v. *Vandoren, 1 McCart. 135,* is an example, and which are enumerated in the recent case of *McClellan* v. *Larchar, 18 Stew. Eq. 17,* by saying that in those cases the estate is given absolutely in the first instance, with absolute right of disposal, and then there is a gift over, at the death of the legatee, of so much as may then remain unexpended ; while here the gift is only for the life of the primary legatee, with remainder absolute in the others, and no right of disposal in the widow.

I understand the rule laid down in the cases, to which the chancellor refers, to be, that where an estate is given *expressly* for life with right of alienation, the right of alienation is held to be merely a power.    But where the estate given is not expressly determined, and a power of alienation is annexed to it, it is construed to be an estate in fee.    The most conspicuous and perhaps most exhaustively considered of these cases, was *Downey* v. *Borden,* in which, in the supreme court (*6·Vr. 74*), this rule was stated by Chief-Justice Beasley, and in the court of errors and appeals (*7 Vr. 466*), was reiterated by Mr. Justice Depue. After a review of the authorities, the latter judge uses this language : " The distinction is between a devise *expressly for life* with a power of disposition annexed, and a devise in *general terms* with such a power annexed.    In the former case, an estate for life only passes ; in the latter, a fee.    As a rule of construction, the principle is entirely settled, that, where lands are devised in the first instance in language indeterminate as to the quantity of the estate from which an estate for life would result by implication,

Rodenfels *v.* Schumann.

and words adapted to the creation of a power of disposal, without restriction as to the mode of execution, are added, the construction will be, that an estate in fee is given ; but where the quantity of the estate of the taker is expressly defined to be for life, the superadded words will be construed to be the mere gift of a power of disposition."

The language of the provision for the widow, in the will before me, is indeterminate as to the quantity of the estate that the widow is to take. If the words "all my property, both real and personal, shall be for the sole use and benefit of my wife, Julianna, after my decease," are taken by themselves, without reference to subsequent clauses of the will, they give the widow a fee. *Hance* v. *West, 3 Vr. 233; Rev. p. 300 § 13.* In the absence of the words "what shall remain," the direction for the disposition of the estate at the death of the wife by implication, determines that the estate to her was for life. But, upon the authority above cited, if the words "what shall remain," in the connection in which they are used, create a power of disposition in the widow, the bequest over is void, and she took a fee. The question, then, is narrowed to this, Did they create such a power? I cannot resist the conclusion that they did. In making provision for his wife, the testator made use of most liberal terms. *All* his property, real and personal, was to be for her *sole* use and benefit. That use and benefit was unrestricted and uncontrolled. It was not limited to consumption of income, or to mere physical enjoyment. It was to be something more than mere usufruct, for it was not to survive the use intact. It was contemplated that some part of it was to be consumed in the wife's use and benefit. The remainder alone was thereafter to be dealt with. In the disposition of that remainder the wife's next of kin was placed on equality with the testator's own, and thereby some right of the wife in the property superior to that which would admit of his giving her the mere usufruct of it during her life was recognized. I think that a broader meaning should be given to the words "what shall remain" than to say that they refer merely to personal chattels consumable by use. To my mind, they plainly imply a power of alienation in the

widow. This being so, she took a fee in her husband's property, and that fee passed to the complainant, Mrs. Rodenfels, by her deed. Taking this view of the case, it is unnecessary to consider other questions suggested at the argument.