<hr />

MARY M. P. WEAVER et al.

*v.*

SARAH A. PATTERSON et al.

[Decided August 23d, 1920.]

1. In suit for partition, where the parties are in possession of the lands with equitable title thereto, having the right to conveyance and possession, such conveyance will be deemed to have been made and partition will be decreed.

2. Where a will gives the entire estate directly to a tenant expressly for life, and at the death of the life tenant gives "the same, or so much as shall remain" to other beneficiaries, and there are no other provisions of the will indicating an intention otherwise, the life tenant takes by implication an unlimited power of disposal of the remainder.

3. Actual seizin of the husband or of some one to his use is a requisite of dower; and actual seizin of the wife is a requisite of curtesy. Hence, where lands are in the possession of a tenant for life, the wife or husband of a remainderman predeceasing the life tenant takes no dower or curtesy.

4. Where lands are in the possession of a tenant for life, the wife or husband of a living remainderman has, however, a contingent interest which will be protected in partition.

5. The estate for life given to a husband by descent by *P. L. 1917 ch. 31 § 6,* adds nothing to his interest in lands where he has an estate by the curtesy consummate.

6. In suit for partition the alleged divorce of one of the co-parceners from his former wife is not proved by oral testimony thereof—the wife not being made a party defendant.

7. Where a life tenant of a share in lands sold in partition has also an unlimited power of disposal over the remainder interest in such share, such life tenant is entitled to have paid to her the entire net proceeds of sale of such share.

8. *Quære.* In such case is either the sale in partition or the payment of the proceeds equivalent to an exercise of the power of disposal?

On final hearing.

*Messrs. Smith & Brady,* for the complainants.

*Mr. Osiris D. McConnell,* for the defendant Sarah A. Patterson.

BUCHANAN, V. C.

The bill is filed for the partition of three parcels of land, designated in the bill as tracts A, B and C. No facts are in dispute, although, there being an infant defendant, proofs were taken in open court.

The devolution of title to tracts B and C comes through the will of the former owner (Mary Winter), whereby an equitable life estate was given to Susan B. Patterson, with an equitable remainder to Susan B. Patterson's children, who were Mary, Sarah, Ella, Clara and William.

Susan B. Patterson died September 2d, 1903; the executor-trustee under the Mary Winter will renounced. An administrator *cum testamento annexo* was appointed, who, on October 7th, 1903, executed a conveyance of the premises to the remaindermen aforesaid. Counsel on both sides have apparently assumed that such conveyance was valid and effective—overlooking the fact that the administrator *cum testamento annexo* is

clothed only with the powers given to the executor as such, and not with the powers given by the will to the executor as trustee. The latter can be exercised only by a substituted trustee. *Casselman* v. *McCooley, 78 N. J. Eq. 253.*

However, under the maxim that equity regards as done that which ought to be done, the defect seems of no actual importance in the present case. In suit for partition the legal conveyance will be deemed to have been made to the equitable remaindermen. *Sailer* v. *Sailer, 41 N. J. Eq. 398* (at *p. 399*).

William, one of the five cotenants, conveyed his undivided one-fifth to his four sisters, November 3d, 1903, thus leaving tracts B and C held by them in respective undivided one-quarter shares.

Susan B. Patterson, in addition to being the equitable life tenant of tracts B and C, was the owner in fee of tract A. This tract she devised to her daughter Sarah for life or spinsterhood, with remainder at the death or marriage of Sarah, to "all my children, share and share alike" (being the five children hereinbefore mentioned). Sarah is still living and unmarried.

The next occurrence affecting the title to the premises of which partition is sought, was the death of Clara in 1912. At that time tracts B and C, as has been noted, were owned by the four daughters of Susan, in one-fourth shares, subject to no life estate, and tract A was owned in fifths by the four daughters and the son, subject, however, to the estate for life or spinsterhood of Sarah.

The clause of Susan B. Patterson's will disposing of the remainder after Sarah's estate for life or until marriage is as follows:

"3—From and immediately after the marriage or decease (before marriage) of my said daughter, Sarah, I give and devise said house and lot to all my children, share and share alike, and to their heirs and assigns forever, it being understood that in case any of my said children should die before that time, leaving children, the child or children of such deceased child shall take the share of the parent."

This remainder vested in the five children immediately upon the death of testatrix—the share of each child being subject to divestiture by the death of such child, leaving children, prior to Sarah's death or marriage. *Trenton Trust Co.* v. *Moore, 83*

*N. J. Eq. 584,* and cases cited. In such event, the children of such child so dying became vested indefeasibly of the parent's share.

Clara died unmarried and childless; hence, there was no divestiture of her share of this remainder and no possibility thereof in the future. Her share, therefore, passed to her devisees, since she left a will, duly probated, disposing of all of her property.

By the terms of Clara's will, her entire residuary estate after payment of debts and funeral expenses—and, therefore, including her one-fourth of tracts B and C, and her one-fifth remainder in tract A—was devised to her sister Sarah for her life, "and at her death" (the will proceeds) "I direct that the same, or so much as shall remain, shall be divided among such of my nieces as may remain unmarried"—with further provisions for certain contingencies in case all the nieces are then married.

The only issue in the cause is as to the meaning and effect of this clause of the will. Complainants (being Mary and the heirs-at-law of Ella) contend that thereunder Sarah takes only a life estate, with no power of disposal, in the undivided shares devised by Clara. The defendant Sarah (who consents to the partition) contends that she has the power of disposal as well as the life estate, and that the sale in partition thus made with her consent will be an exercise of the power of disposal, and she will be entitled to receive the entire proceeds of sale of the share in question. It is not quite clear from the briefs whether she also claims that the absolute ownership of these proceeds of sale will be thereby vested in her. The brother, William, filed no answer and does not support either end of the argument.

It is, of course, quite clear that the will of Clara does not give Sarah the absolute ownership. The language is express and certain creating a life estate. with, at most, an added power of disposition. *Downey* v. *Borden, 36 N. J. Law 460; Wooster* v. *Cooper, 53 N. J. Eq. 682.*

Has she in fact such power of disposal? There are no express words creating such a power; but the power need not be express, it may be implied where such implication is a reasonably necessary result of the language used. In the present case it is contended that such is the necessary implication of the phrase *"or*

*as much as shall remain"* (at the death of Sarah), used in quali-
fication of the subject-matter of the gift over after Sarah's life
estate.

In *Annin's Executors* v. *Vandoren's Administrator, 14 N. J.
Eq. 135,* it is held that the phrase there used by testator in
qualification of the remainder over, *"such part thereof as re-
mains unexpended,"* implied a power of disposal in the life
tenant.

In *Wilson* v. *Wilson, 46 N. J. Eq. 321,* the phrase qualifying
the remainder over was "whatever it may be;" and it was held
that a power of disposal in the life tenant was not thereby
implied.

The words in the present case, *"or as much as shall remain,"*
would seem to lie somewhere in between the last-mentioned two
phrases—although in *Annin* v. *Vandoren, supra* (at *p. 144*), the
chancellor expresses himself as of the opinion that *"so much as
remains"* is equivalent to *"so much as remains unexpended"* or
*"so much as remains undisposed of."*

In *Naundorf* v. *Schumann, 41 N. J. Eq. 14,* Chancellor Run-
yon holds that the phrase *"what shall remain"* (which I con-
ceive, unquestionably, to be equivalent to *"so much as shall re-
main"*) does not imply a power of disposal in the life tenant.
In *Rodenfels* v. *Schumann, 45 N. J. Eq. 383,* however, the same
part of the same will was again before this court, and the same
phrase was held· by Chancellor McGill to imply the power of
disposal.

In *Bryan* v. *Bryan, 61 N. J. Eq. 45,* Vice-Chancellor Pitney
holds that the words *"the remainder that may be left"* imply the
power of disposal in the life tenant, following *Rodenfels* v.
*Schumann, supra.* Yet in *Tooker* v. *Tooker, 71 N. J. Eq. 513,*
he holds that the words *"what remains,"* or words equivalent
thereto, do not give rise to such implication; the opinion in this
behalf being unnecessary, since by other words in the will there
considered it was clear that testator had not intended to give the
power of disposal.

Since the *Tooker Case* there have been apparently but two
cases adjudicated in this state which in anywise deal with the
question. (*Bennett* v. *Association, &c., 79 N. J. Eq. 76,* deals

with a will where the power of disposal was given in express words.) *McCloskey* v. *Thorpe, 74 N. J. Eq. 413* (reversing *S. C., 73 N. J. Eq. 202*), decides that a power of disposal is implied by the words *"if there should be anything left."* The opinion mentions the opinion in the *Tooker Case,* without either approval or disapproval, pointing out that the wording *"if. there should be anything left"* give stronger support to the implication of the power than the words *"what remains."*

The last case is *Brohm* v. *Berner, '77 Atl. Rep. 517,* where the court of errors and appeals, affirming a judgment in the supreme court, expressly decides that "an unlimited power of disposal" in the first donee "arises by necessary implication" from the will there under consideration, where the qualifying phrase used was *"the balance."* It is true that the opinion points out that the original gift is of testator's entire real and personal estate and is given directly to the first donee (his wife) for "her own private use forever," and that the word "use," thus employed, "implies something more than a mere usufruct." But the opinion proceeds to construe *"balance"* as being equivalent to "what remains," and as being "almost identical with the provision of the will construed in *Annin* v. *Vandoren, supra"*—*i. e., "such part thereof as remains unexpended"*—and approves the decision in this behalf in *Annin* v. *Vandoren.* The opinion in the *Tooker Case* is then discussed—and while it is neither expressly approved or disapproved, I am unable to escape the conclusion, from what is there said and from the effect of the opinion as a whole, that the general proposition laid down in the *Tooker Case* is impliedly disapproved, and that where a testamentary gift over is qualified by the phrase *"so much as remains,"* or *"whatever remains,"* or equivalent language, an unlimited power of disposal in the first taker is to be deemed implied thereby, unless there be other provisions in the will indicating an intention to the contrary.

I feel constrained, therefore, to hold that in the present case Sarah A. Patterson takes, under the will of her sister Clara, a life estate in Clara's undivided shares, together with an unlimited power of disposal—for I find no other provision in the will indicating a different intention. It is true that the will

goes on to provide for substitutionary takers of the gift over, in the event of certain contingencies, and designates the property given to them as *"the remainder of my estate,"* but it is impossible to say that she meant thereby a technical estate in remainder after a life estate with no power of disposal, and did not mean thereby "so much as shall remain at the death of Sarah A. Patterson undisposed of by her." On the contrary, it is perfectly obvious that that which she gives to these contingent takers is precisely the same property and estate which she gives in the first expression of the gift over to the unmarried nieces; it provides merely for what is to be done with that which she gave to the unmarried nieces, in the event that there be no unmarried nieces to take.

Of the other children of Susan B. Patterson, Ella died November 1st, 1916, intestate, leaving a husband, Thomas S. Pursel, and four children—Thomas S. Pursel, Jr., Mary L. Pickel, Clara Winter and Stanley Pursel. (Of these children, the first two are married; the third a widow, and the fourth a minor.) Hence, Ella's one-fifth remainder in tract A, by reason of the provisions of Susan B. Patterson's will, became vested indefeasibly in Ella's four children, each taking an undivided one-twentieth of that tract. The wife of Thomas Pursel, Jr., has, of course, no vested inchoate dower in his one-twentieth, since the whole of tract A is in the possession of the life tenant, Sarah, and the husband must be seized in order to endow the wife.. Our Dower act (*2 Comp. Stat. p. 2043 § 1*) enlarges the common law rule only to the extent that the seizin of a trustee for the husband is made equivalent to the husband's own seizin. The wife here has, however, a contingent interest. Conversely, while the proofs fail to show that any issue had been born to Mary L. Pickel, nevertheless, her husband has also at least a contingent interest in remainder in her one-twentieth. *Hackensack Trust Co.* v. *Tracy, 99 All. Rep. 846.* Ella's one-fourth share of tracts B and C passed by the statute of descent to her four children, giving them each an undivided sixteenth—subject, however, to the curtesy of her husband, which became consummate on her death in 1916—she, together with her coparceners, having become seized of these tracts on the death of Susan B. Patterson.

It is, perhaps, unnecessary to refer to the fact that section 7 of *P. L. 1915 p. 61*, purporting to abolish curtesy, was adjudged unconstitutional in *Reese* v. *Stires, 87 N. J. Eq. 32*, and probably would not have affected this husband's right in any event. *Class* v. *Strack, 85 N. J. Eq. 819; Hackensack Trust Co.* v. *Tracy, supra.* It may be noted, however, that that statute was not repealed until 1917, and was therefore in existence at the death of Ella Pursel—as an amendment to the statute of descent—and by section 6 thereof gives to the husband by descent a life estate in one-third of the wife's lands. Section 6 is valid (*Barry* v. *Rosenblatt, 90 N. J. Eq. 2*), notwithstanding the invalidity of section 7. But it is obvious that the husband's estate by the curtesy in *all* the wife's lands can in nowise be enlarged by his taking by descent a life estate in one-third of those lands. The statute would, however, operate on lands of which the wife was not actually seized.

William Patterson was a married man in 1903. The bill alleges that he has since been divorced by his wife, Anna. She is not a party to the suit. The only evidence of the alleged divorce is the testimony of Sarah Patterson that her brother, William, "was divorced from his wife, Anna, and has not since remarried." This is, obviously, insufficient evidence to warrant the turning over to William of any share of the proceeds of sale upon an order of distribution, without securing Anna's possible interest therein; but he has no interest in tracts B and C, and his one-fifth interest in tract A is of the remainder, subject to Sarah's life estate.

Mary Patterson is married to Ethan A. Weaver, and has two daughters, Marguerite and Gertrude. Her husband, therefore, has an inchoate curtesy in her one-fourth share of tracts B and C. He has no inchoate curtesy in her one-fifth share of tract A, which is still in the possession of the life tenant, Sarah. Seizin of the wife is requisite to the husband's curtesy. *Hackensack Trust Co.* v. *Tracy, supra; Hopper* v. *Demarest, 21 N. J. Law 525* (at *p. 542*); *17 C. J. 418*, § *11*, and *425*, § *30.* He has, however, a contingent interest—contingent upon the death of Sarah before Mary. The daughters, Marguerite and Gertrude, are the only nieces of Clara Patterson now remaining

unmarried, and under the provisions of Clara Patterson's will, they are therefore vested with the remainder in the undivided one-fifth of tract A and the undivided one-fourth of tracts B and C, owned by Clara Patterson at her death, subject, however, to divestiture in the event of their marriage before the death of Sarah, and, possibly, also, *pro tanto* by the birth hereafter of other nieces of Clara Patterson prior to Sarah's death; subject, also, of course, to Sarah's life estate and her unlimited power of disposal.

It is clear from the proofs that there must be a decree for sale. Actual partition is utterly impractical. Tract A consists of a dwelling-house and small lot whereon it is erected. Tract B consists of a similar house and lot, and tract C of a forty-foot lot whereon is erected a double house.

Sarah, as life tenant of tract A, by her answer consents to the sale of tract A, pursuant to section 27 of the Partition act. *3 Comp. Stat. p. 3906.* She likewise consented to the sale of her life estate in the share in remainder of tracts A, B and C, devised to her by Clara's will, although such consent seems unnecessary under sections 26 and 45 of the act. It is not necessary to decide whether or not the sale, in connection with the statements and claims in Sarah's answer, will operate as a disposition by Sarah in her own behalf (of the share devised by Clara Patterson with power of disposal) sufficient to cut off the remaindermen under the Clara Patterson will, from any claim to the proceeds of sale in case, for instance, Sarah should die after decree and before distribution. Sarah is entitled to have this share paid over to her, under section 50 of the act, and, in view of her unlimited power of disposal, it would seem that she need give no security. She is, of course, entitled to have paid over to her her own undivided one-fifth remainder in tract A and one-fourth in tracts B and C, and under section 50 she is entitled to have paid over to her the entire net proceeds of tract A, to be used and enjoyed by her for her life or until marriage. In such event, however, she may be required to give security for the protection of the three undivided one-fifths in remainder which were devised to Mary, Ella and William.

Under section 27, it is, apparently, contemplated that commutation of the value of life estates and remainders may be made.

The final determination of these .matters may, however, await the application for order of distribution.

The proofs show no liens or encumbrances on any of the several shares.

A decree for sale in partition will be advised, adjudging the shares or interests of the several parties as hereinbefore set forth. The sale and conveyance will, of course, include the several dower and curtesy interests.