WILLIAM F. REDMOND et al., complainants,

*v.*

MARY S. GUMMERE et al., defendants.

[Decided November 20th, 1922.]

Appeal of Robert C. B. Parker.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"The bill is filed for construction of the will of Elizabeth D. Gummere, deceased, and directions to the substituted trustees of a certain trust therein and thereby created. None of the facts are in dispute.

"Testatrix died December 21st, 1874. By the third clause of her will she gave to her trustees certain real estate in Philadelphia, upon the following trusts:

" 'To pay the net income therefrom "to my said two daughters, Anna M. and Ellen E., for their joint use as long as they remain living and unmarried, and to the survivor of them so long as she remains unmarried for her sole use. Should either of them marry; to pay the same to the other so long as she lives unmarried, and upon her marriage or death to sell * * * and to pay over and divide the proceeds of such sale among my children, Maria M. Parker, Barker Gummere, Charles J. Gummere, Anna M. Gummere and Ellen E. Gummere, in equal shares, in all cases the children of a deceased parent to receive said parent's share." '

"By the fourth clause of the will a gift was made of $2,000 to the trustees to be invested and held upon the same trusts.

"Neither of the equitable life tenants married. Anna died January 20th, 1905, and Ellen died May 3d, 1920. The present trustees have sold the real estate and have in their hands for distribution to those entitled thereto a fund of upwards of $30,000, being the aggregate principal of the two trust funds (plus some income accumulated since the death of Ellen). The issue is as to who are the 'equitable remaindermen' under the terms of the will, and the circumstances which have occurred.

"The two trust funds may of course be considered as one, for the trusts are identical and are in reality both of personal property, because of the direction to sell the real estate. *Cool* v. *Cook, 20 N. J. Eq. 375; Crane* v. *Bolles, 49 N. J. Eq. 373; Camden Safe Deposit Co.* v. *Guerin, 89 N. J. Eq. 556* (at *p. 558*); *Cranstoun* v. *Westendoorf, 91 N. J. Eq. 34* (at *p. 36*); *Triplett* v. *Ivins, 112 Atl. Rep. 509* (at *p. 510*).

"The only words of gift to the five named as 'equitable remaindermen' are in the direction to pay and divide. Ordinarily the vesting of such gift would not take place until the arrival of the time for distribution, but where the time of payment is postponed only for the purpose of letting in a life interest, the remainder interests vest immediately on the death of the testator. *Post* v. *Herbert, 27 N. J. Eq. 540,* followed by a long line of subsequent cases, among the more recent of which may be mentioned *Cranstoun* v. *Westendoorf, supra* (at *p. 37*); *Freund* v. *Freund, 91 N. J. Eq. 80; Shepherd* v. *Davis, 91 N. J. Eq. 468* (at *p. 471*).

"This is precisely the situation in the case at bar. The distribution to the ultimate beneficiaries is postponed to a time subsequent to the death of the testator, only for the purpose of letting in the intermediate estate. This intermediate estate is, at maximum, an estate of two lives. It is the typical case of a remainder after a life estate, and subject to no uncertainty except the precise time of the certain termination of the preceding life estate.

"Although the remaindermen in fact constitute a class, yet the gift is to them by their respective names, and with the further qualifying clause 'in equal shares.' There can be no doubt, therefore, that the gift is in severalty and not as joint tenants. *Dildine* v. *Dildine, 32 N. J. Eq. 78; Pennsylvania Co.* v. *Riley, 89 N. J. Eq. 252* (at *p. 255*).

"All five remaindermen survived testatrix, and each of them therefore became immediately vested of an undivided one-fifth share in the equitable remainder.

"The meaning and effect of the concluding clause of the trust or gift, 'in all cases the children of a deceased parent to receive said parent's share' is of course perfectly clear, to this extent: that as to each of the five named remaindermen, if he or she dies before the arrival of the distribution period, leaving children, the share or interest theretofore vested in him or her shall become thereby divested and shall vest in such children. *Security Trust Co.* v. *Lovett, 78 N. J. Eq. 445; Trenton Trust Co.* v. *Moore, 83 N. J. Eq. 584* (at *p. 587*); *affirmed, 84 N. J. Eq. 194; Hicks* v. *Hicks, 84 N. J. Eq. 515* (at *p. 518*); *Miers* v. *Persons, 92 N. J. Eq. 17*.

"Since the divesting is to occur only in favor of children of a remainderman predeceasing the distribution period, there is no divesting in the case of a remainderman dying without children, and in such case the vested share or interest passes to the personal representative of the one so dying. *Brown* v. *Fidelity Trust Co., 82 N. J. Eq. 323* (at *p. 326*); *Trenton Trust Co.* v. *Moore, supra.*

"The word 'children' in a will does not ordinarily mean anything other than its natural and usual meaning in every-

day language. There is nothing in this will to indicate that its meaning was intended to be more extensive.

"The contingent substitutionary gift is to 'the children' of the deceased parent. This is a gift to a class, the ascertainment of which class is to be made at the death of the parent. The children surviving the deceased parent become immediately vested in the interest, in substitution for the parent. The gift, however, being to them as a class, without words of severance or any other indication of a contrary intent, they take as joint tenants, and hence with the right of survivorship. *Crane* v. *Bolles, 49 N. J. Eq. 373; Harris* v. *Tichenor, 28 N. J. Eq. 328.*

"At the oral argument the contention was made by counsel for Robert Parker that testatrix could not have intended her daughters Anna and Ellen to take immediate vested one-fifth interests in the remainder, since they were the life tenants, and if such had been the intention of testatrix she would have given each a one-fifth share outright and applied the trust provisions only to the three remaining shares. Reference to the language of the trust, however, shows that this argument is without sound basis, for the life estate is not unqualified—it is an estate for life and spinsterhood. If either life tenant marries the termination of her life interest is thereby accelerated; if the other is still living and single, the entire interest of the first, except as to the remainder, passes to the second. Testatrix could not give to either an absolute share outright without interfering with this design.

"It remains only to apply the principles hereinbefore set forth to the facts of the case at bar. Of the five remaindermen, Charles J. Gummere died first (in 1880) intestate, unmarried, and, of course, without children. No administration was ever issued on his estate. His four brothers and sisters became entitled in equal shares to his one-fifth interest, subject to his debts. There was no collateral inheritance tax at that time upon such intestate succession, and at this late date there can be no debts.

"Anna M. Gummere died without children, leaving a will of which William F. Redmond is substituted administrator

*cum testamento annexo.* The latter is entitled to one-fourth of the trust fund: Anna's original one-fifth plus the one-fourth of Charles' one-fifth.

"Ellen E. Gummere likewise died testate and without children. William F. Redmond as her executor is similarily entitled to one-fourth of the trust fund.

"Maria M. Parker had four children, Elizabeth, Helen, Charles J. and Frederick. She died in 1900, intestate, survived by her two sons only. They took jointly their mother's original one-fifth share, and severally, as her next of kin, the one-twentieth which came to her from Charles J. Gummere. Frederick died in 1907, leaving a will of which Mary H. B. Parker is executrix. The latter is therefore entitled to one-fortieth of the fund. Charles J. Parker died testate in 1917. Alida M. Parker, as his executrix, is entitled to one-fifth plus one-fortieth of the fund, or nine-fortieths.

"Barker Gummere died in 1895, leaving eight children who took, as joint tenants, his one-fifth share. Two are now dead; the remaining six, Mary S. Gummere, William S. Gummere, Elizabeth G. Hamill, Isabelle Gummere, Gertrude M. Gummere and Charles E. Gummere, are jointly entitled to one-fifth of the fund. As to the one-twentieth which came to Barker Gummere from Charles J. Gummere, that passed by Barker Gummere's will to his widow, Elizabeth S. Gummere, as his executrix and sole beneficiary. The latter died in 1898, leaving a will whereby she gave her entire estate to her eight children in equal shares. Barker Gummere, Jr., the executor thereof, is dead. The six children of Barker Gummere already named take each a one-one hundred and sixtieth of the fund, and so also does Trenton Trust Company, as executor of Samuel R. Gummere, deceased, and Truston Trust Company, as substituted administrator *cum testamento annexo* of Barker Gummere, Jr., deceased."

BLACK, J. (dissenting).

The bill of complaint was filed in this case to obtain a construction of the third clause in the will of Elizabeth D. Gummere, deceased. She died December 21st, 1874. The

will was dated August 30th, 1872. The last equitable life tenant died May 3d, 1920. The facts are sufficiently and clearly stated in the opinion of the learned vice-chancellor, who heard and advised a decree in the case. The decree of the court of chancery was affirmed by this court. The only appeal taken was by Robert C. B. Parker, a great grandson of the testatrix. He and his brother, Edward D. G. Parker, were two surviving children of Frederick Parker, who died August 17th, 1907. Frederick Parker and his brother, Charles J. Parker, who died March 26th, 1917, were the surviving children of Maria M. Parker, one of the children mentioned in the third clause of the will of the testatrix. She died in the year 1900. The court of chancery, by its final decree, held the children of Maria M. Parker, Frederick and Charles J., took as joint tenants, with the incident of survivorship. The result being the interest of Frederick Parker, at his death, went to his brother, Charles J. Parker, and not to his children, one of whom is the apellant. The words in the will which give rise to the controversy are these: "to pay over and divide the proceeds of such sale among my children, Maria M. Parker, Barker Gummere, Charles J. Gummere, Anna M. Gummere and Ellen E. Gummere, *in equal shares. in all cases* the children of a deceased parent to receive said parent's share." The learned vice-chancellor, all the children named in the will being dead, applied the rule (the gift being to the children of the testatrix, after a life estate, with a substitutionary gift over to the children of any deceased child). Such children took as a class, as joint tenants with the incident of survivorship. The court finding the will contained no words of severance or any other indication of a contrary intent. The word "children" being used in its literal or restricted sense. But it is a cardinal rule for the construction of wills that all the words must be given a meaning. The fundamental principle underlying all construction and interpretation of wills is to carry out the intention of the testatrix, as ascertained from the will. The words *"in equal shares," "in all cases"* excludes the rule applied by the learned vice-chancellor. The result reached

by him, would have been the same if the words in the will "in equal shares," "in all cases" the children of a deceased parent, &c., had not been used, under *Crane* v. *Bolles, 49 N. J. Eq. 373.* In that case the clause of the will construed contained no words of severance or other expression of intention, which would take it out of the rule, that a bequest to a class, without more creates a joint tenancy—with the incident of susvivorship. The words of the will in that case are, "It is my will that the issue of any child who may hereafter decease shall receive the share or portion to which their parents would be entitled if living." In *Post* v. *Herbert, 27 N. J. Eq. 547,* Chief-Justice Beasley, speaking for this court, said, where a division is directed to be made between legatees, the words: *"share and share alike"* are clear words of severance, denoting the plurality of interest among the objects of the gift, and therefore the rule invoked is excluded, viz., that a joint tenancy was created.

So, in this case, the words "in equal shares, in all cases the children of a deceased parent to receive said parent's share," is clear and apt language to express the testatrix's will, that her bequest should be given to those who stood in the place of the deceased parent, the word "children" was not used in its limited or restricted sense. So, the division is directed to be made between the legatees in equal shares denoting a plurality of interest among the objects of the gift, therefore the rule invoked should be excluded.

I think Frederick Parker's interest went by law to his children and not to this brother, Charles J. Parker, under the will of the testatrix; to that extent the decree of the court of chancery should be reversed.

Judge White requests me to add that he is in accord with the above views.

*Messrs. McDermott, Enright & Carpenter,* for the appellants.

*Mr. Aaron V. Dawes* and *Mr. Charles E. Gummere,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance*—SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, KATZENBACH, WILLIAMS, GARDNER, ACKERSON—10.

*For reversal*—BLACK, WHITE, VAN BUSKIRK—3.