Complainant is the widow of Leon N.F. Blanchard, deceased, and brings this suit in her capacity as a beneficiary and also as an executrix and trustee under the will of her husband, for a construction of that will. The defendants are Wallace H. Blanchard, individually and as co-executor and co-trustee under the will, and the designated beneficiaries.
A clear understanding of the general scheme of the will cannot be had by reference to isolated portions thereof, and for that reason the entire will, with the exception of purely formal parts, is set forth as follows:
"I nominate and appoint my dear wife, Annie B. Blanchard, and my son, Wallace H. Blanchard, executrix and executor of this my last will and testament, my executrix and executor shall not be required to give bonds or security for the faithful performance of their duties, and they each one of them shall receive the sum of two thousand ($2,000) dollars for their services as soon as convenient after my decease. I employ them jointly to sell real estate, and stocks, not mentioned herein and reinvest in such security or securities as in their judgment, they deem best, other than in stocks. The stocks I own in the Prudential Insurance Company of America (402 shares) I order to be held by them, until they can realize the sum of not less than five hundred thousand ($500,000) dollars, and I do not then require them to sell even at this amount, should they, in their judgment deem best to retain them for a better price.
I give to my wife the use of the home or homes I now own or may hereafter acquire, and the contents and all automobiles so long as she may desire, I empower my executrix and executor to sell such home or homes, the contents and automobiles, when requested in writing by my wife, Annie B. Blanchard, and the proceeds to be invested as she may desire for her comfort.
I make this one exception that of my summer home in Macon, Oxford county, in the State of Maine, that can only be sold by the written consent of my son, Wallace H. Blanchard. *Page 437 
I give to my wife and order paid to her, such sums of money as is necessary, for her personal needs and comforts, and to continue said payments until the distribution of my estate, then I order my executrix and executor to take from my estate, such securities, the amount at interest, will realize annually, the sum of ten thousand ($10,000) dollars, and pay this amount to my wife, Annie B. Blanchard, as received from the securities, and to continue so long as she may live. I order these securities to be deposited in a trust fund, in a responsible national bank, during her life, the interest to be paid her as above stated.
Should the stock I now own in the Prudential Insurance Company of America be sold at any time, I order my executrix and executor to invest the amount and deposit one-third (1-3) of the total amount in the securities, in the trust fund established for the benefit of my wife, under the same provisions, the interests to be paid to her as previously stated.
After providing for the payment of taxes, and upkeep of the property or properties, the balance of the interests to be divided at any time as follows:
One part to be paid to my daughter, Bertha B. Clayton.
Two parts to be paid to my son, Wallace H. Blanchard.
And to provide for the maintenance of my granddaughter, Elizabeth B. Blanchard.
These payments to continue until the distribution of my estate, I then order my executrix and executor to pay to my grandson, Kenneth E. Sutphen, as soon as they can conveniently, the sum of two thousand ($2,000) dollars.
I order my executrix and executor to pay to my daughter-in-law, Florence Blanchard, wife of Linus L. Blanchard, the sum of fifteen ($15) dollars per week, so long as she may live, or should she marry, all payments are to stop, and she is not to have any further interest in my estate, should my executrix and executor deem best they may form a trust fund, the interest to realize this payment. I instruct my executrix and executor to pay my son, Linus L. Blanchard, the sum of twenty-five ($25.00) dollars per week so long as he may live, this payment can also be provided for in a trust fund, my son, Linus, has forfeited all further claims to any part of my estate. At the termination of these two weekly payments, the principals shall revert to the residue of my estate.
The two-thirds (2-3) remaining from the sale of the Prudential Insurance Company's stock, I order divided according to the provisions of the residue of my estate. At the death of my wife, Annie B. Blanchard, the trust fund for her benefit, I order divided as provided for the residue of my estate.
The residue of my estate to be distributed as follows:
To my daughter, Bertha B. Clayton, I give two parts, to her trust fund account, so long as she may live.
To my son, Wallace H. Blanchard, I give three parts in trust fund account.
To my granddaughter, Elizabeth B. Blanchard, I give one part
in trust fund account. *Page 438 
The two parts to be held in trust for my daughter, Bertha B. Clayton, so long as she may live, and the interest to be paid to her as received by the trustees, and at her death, the principal to be equally divided between the existing trust accounts.
The three parts to my son, Wallace H. Blanchard, is to be held in a trust fund and he is to receive the interests as it is collected by the trustees, at the age of fifty-five years, he may receive the principal or continue the trust account, as he deems best, should my son, Wallace, be taken by death before he attains the age of fifty-five years, and leaves a widow, and so long as she remains his widow, she is entitled to receive one-half of the income from his trust fund account, so long as she may live, and the other, one-half or should she marry, the full amount of his trust account to be equally divided between the existing trust accounts. Should there be no trust accounts, then I order the principal to be held in trust and the interests paid to the next heir entitled thereto and to continue for a term of ten
years then I order the principal to be divided equally between my heirs.
Should there by any attempt to contest this my last will, by any beneficiary, I order and direct my executrix and executor to cancel any and all bequests, and such bequests or bequest to revert to the residue of my estate, and disposed of according to the provisions of disposing of the residue of my estate."
The testator died on December 4th, 1926, a resident of Newark, New Jersey. His will, which was drafted by him and was in his own handwriting, was probated December 16th, 1926. The beneficiaries named in the will are his widow, the complainant herein; Wallace H. Blanchard, a son by a former marriage; Bertha B. Clayton, a daughter by a former marriage; Linus L. Blanchard, a son of the testator and the complainant; Elizabeth B. Salisbury, a daughter of Linus L. Blanchard; Kenneth E. Sutphen, son of a predeceased daughter of the testator by a former marriage, and Florence Blanchard, wife of Linus, who died on May 18th, 1932. Charlotte W. Blanchard is the wife of Wallace H. Blanchard. Ethel L. Blanchard is the present wife of Linus.
The appraised value of the testator's estate as of the date of his death was $498,917.48 and included four hundred and two shares of stock of the Prudential Insurance Company of America and a $170,000 mortgage on land of Allenhurst Park Estates.
At the time of his death the income from his investments was over $21,000 annually, which included $10,200 on the *Page 439 
Allenhurst mortgage. Interest was paid on that mortgage up to the date of death, but none has been paid since. This, despite the fact that $66,000 has been paid on account of principal and portions of the mortgaged premises released. The defendant Wallace H. Blanchard has assumed the active management of this estate, and is also a stockholder, director and officer of the corporation which owns the Allenhurst property.
On January 11th, 1928, complainant and the defendant Wallace H. Blanchard as executors, filed an accounting in the Essex county orphans court, which was approved on June 8th, 1928, showing a balance on hand of $489,130.17. All debts had been paid prior to the accounting, and upon the allowance of the account the $2,000 legacy to Kenneth Sutphen was paid, as were also the accrued annuities of Florence and Linus Blanchard and $2,000 to each of the executors for their compensation as fixed by the will.
The will directs the executrix and executor to take from the estate such securities as will produce annually $10,000 and to pay this amount to complainant so long as she may live. It is this provision which is at the basis of the present litigation. The interest on the Allenhurst mortgage not being paid, there is insufficient income to provide the $10,000 annually for the widow, unless there is included the income from the Prudential Insurance Company stock. Defendant Wallace H. Blanchard insists that this stock is not a security and that therefore it is not available for the trust fund. In answer to this contention it is sufficient to say that the tesator's primary purpose will not be defeated by ascribing a technical definition to a word, especially in a case such as this, where the will was drawn by the testator and not by one familiar with strict legal phraseology.
It is true that in Graydon's Executors v. Graydon, 23 N.J. Eq. 229,
Chancellor Zabriskie held that "shares in the capital stock of corporations are neither money nor securities;" and this statement was apparently approved by the court of errors and appeals. 25 N.J. Eq. 561. But that *Page 440 
statement was made more than sixty years ago. The modern development of the "investing" idea among the general public has resulted in a synonymous use of terms which originally may have had different meanings. The chancellor also said that "shares of capital stock are never called securities;" a statement which obviously would not hold good to-day, at least among the laity. And there is respectable judicial and legislative authority for including stocks in the term "securities." Fox v. Harris
(Court of Appeals of Maryland, 1922), 119 Atl. Rep. 256: "An act to prevent fraud respecting securities offered for sale in this state." P.L. 1920 ch. 234. The expression "stocks, bonds, notes or other securities" is used throughout the statute cited. (Italics mine.)
In 25 Am. Eng. Encycl. L. 180, it is stated that "the term [security] in its broadest sense embraces bonds, certificates of stock, promissory notes, bills of exchange, c." And there is no doubt in my mind that the testator used the word "securities" in his will in its broadest sense. Moreover, a careful reading of Chancellor Zabriskie's opinion in the Graydon Case indicates that the construction there placed upon the word "securities" arose ex necessitate to carry out the intention of the testator. Stocks were there excluded from the term "securities" bcause otherwise there would have been insufficient available assets of the estate to produce $12,000 per year. Here, unless stocks are included in the term "securities" there will be insufficient assets of the estate to produce $10,000 per year for the widow. Technical words always yield to the intention of the testator and that intention must control. The apparently variant conclusions of the Graydon Case and this one are produced by similar reasoning applied for the purpose of obtaining a like result, a construction of the will in accordance with the obvious intent of the testator.
It is true that the testator apparently thought the trust could be set up without resorting to the Prudential stock, for he directed that this stock be held until it could be sold for not less than $500,000, and ordered that upon its sale one-third *Page 441 
of the proceeds thereof be added to the trust fund. That he considered the words "stock" and "securities" synonymous is apparent from his directions to sell "stocks not mentioned herein and reinvest in such security or securities as in their judgment they deem best, other than in stock."
The duty of the court is to construe the will as written, in the light of the circumstances at the date of its execution and not to surmise or guess what the testator would have done had he foreseen what would happen after his death and then try to give effect to his supposed wishes.
It may have been that this testator intended to provide support for all his household after his death the same as he had during his lifetime — but it is not so much what he intended as what he did in fact do, unless the plain intent is contrary to the fact. We may not guess at his intent, but must find it in the language of his will. At the date of the will and at the time of his death he no doubt considered, and was justified in doing so, that the Allenhurst mortgage was good, and would continue to yield in the future, as it had in the past, an income equal to that provided for his wife. He may even have intended that that mortgage be set aside as a part, or all, of the trust for her — but he did not say so and we cannot supply appropriate words in his will to do so now. Had his son, Wallace, co-executor, insisted upon his company, of which he was the treasurer — placed in that position by his father for that very purpose — paying the interest on the mortgage in preference to making payments on account of principal and obtaining releases (to which the company was not entitled), the presumed expectations of the testator would have been realized. Not having done so and not having set up the trust for the complainant when it should have been done he must do so now; and if it be necessary to use the Prudential stock for that purpose and he suffers in income as a result thereof he has no one to thank for that unfortunate result but himself.
It plainly appears from a reading of the entire will that the testator's foremost and primary intention was to provide *Page 442 
first for his wife, the complainant. And it is elementary that where the dominant purpose of a testator clearly appears upon the face of the will, the whole instrument will be construed in accordance therewith — all other provisions must be held subservient to the dominant purpose. Carter v. Gray, 58 N.J. Eq. 411; Johnson v. Haldane, 95 N.J. Eq. 404; Swetland v.Swetland, 100 N.J. Eq. 196.
It is contended by certain of the defendants that the complainant is bound by the terms of an alleged agreement or family settlement. For a considerable time after her husband's death, the complainant was given small weekly allowances by her co-executor, who, as above stated, assumed the active management of the estate. Complainant frequently asked for her $10,000 annually, but was told that there was insufficient money to pay her and that it would be given to her as soon as possible. According to the testimony of Wallace H. Blanchard, he devised a scheme for the division of the income of the estate. According to his computation, the annual income of the estate, assuming the interest on the Allenhurst mortgage were collected, would be $18,000. Deducting from this sum the annuities previously mentioned, he arrived at a figure of $16,000. Then he "saw mother was to get ten and I was to get three, and Bertha would get two and Elizabeth one, it was very plain that you could make a division dividing it into sixteen parts, so that any amount of money checked out of the estate could be divided proportionately that way." An arrangement was accordingly entered into by which complainant was to receive ten-sixteenths of the annual income, Wallace was to get three-sixteenths, Bertha two-sixteenths and Elizabeth one-sixteenth. Under this plan complainant received in 1928, $1,000; in 1929, $5,250; in 1930, $6,250; in 1931, $6,250; in 1932, $6,262.50, and in 1933, until May 26th, after which Wallace refused to sign further checks for the complainant on account of the present controversy, $3,700. Complainant refused to sign estate checks for Wallace, Bertha and Elizabeth after June of 1932. *Page 443 
Certain of the defendants now contend that this arrangement constituted a permanent and final family settlement of the matter and that it was so intended by all the parties. There is no doubt that the agreement was made and acquiesced in by the complainant, but it was temporary only. The agreement was not intended as a substitute for the provisions of the will; it was made in the hope that things would turn for the better within a reasonable time and with the intention that then the complainant would receive her due. The complainant did not intend to give up the income which the will provided for her for the benefit of the remaindermen.
It may be said here — and this is also pertinent to the observation previously made as to the dominant purpose of the testator — that the complainant is now past the allotted three score and ten and is living on borrowed time. Can it be said that the testator intended that her declining years should be spent in penury for the sake of providing more liberally after her death for his children? True, he had always supported them, but there is no evidence that he would have done so at the cost of depriving either himself or his wife of the luxuries to which they had been accustomed and which it was his evident intent his wife should continue to enjoy after his death. Her acquiescence in the temporary arrangement cannot estop her from now asserting her rights, the benefits of which have already been too long delayed.
It is also urged by certain of the defendants that the provisions for the complainant with reference to the $10,000 a year is a specific and neither a general nor a demonstrative legacy nor an annuity. It is specific to this extent — the will authorizes the executor to select from the assets of the estate such securities as will produce $10,000 annually. Once they are selected that ends the matter. Allen v. Allen, 76 N.J. Eq. 245; Blundell v. Pope, 21 Atl. Rep. 456. The case of Merritt
v. Merritt, 43 N.J. Eq. 11, seems to be authority for this court to now require the setting apart in a trust fund of sufficient securities (including the Prudential stock) as will produce $10,000 annually at this time. Once the trust *Page 444 
fund is set up the complainant will be entitled to the income on that fund and nothing else, even though the future income may be less than $10,000. Of course, she would also be entitled to the income on the additional bequests to that fund, i.e., on the proceeds of the sale of the houses, automobiles, c., and on one-third of the proceeds of such part of the Prudential stock as it is not now necessary to use in setting up the fund, if any, when sold. It is not necessary to sell any part of the Prudential stock in order to set up the trust. I think, also, that good
income-producing securities other than the Prudential stock should be first used in setting up the trust, not including, of course, the Allenhurst mortgage, which is in default and not now income-producing. If the executors had used the Allenhurst mortgage as part of the trust fund immediately after the testator's death and before it became in default, no one could complain if it later went bad. And no one can complain now that circumstances prevent its use for that purpose.
To recapitulate, the will evidences a fairly definite scheme of distribution and provision for the objects of the testator's bounty. The first thought was to provide for his widow, and realizing that there would be some interval between his death and the setting up of the trust for her — a year under the statute — he provides that during that interval she shall be paid such sums as are necessary for her support. During that same period, after such provision had been made for the widow, and after the payment of taxes and the upkeep of the real estate, one-third of the remaining income was to be paid to his daughter, Bertha, and two-thirds to his son, Wallace, and to provide for the maintenance of his granddaughter, Elizabeth.
After this was done then a trust fund might be set up to provide $25 per week for Linus and $15 per week for Florence. At the time of distribution $2,000 was to be paid to Kenneth Sutphen. Then the residue of the estate, i.e., whatever might be left after setting up the trust fund for the widow, making provision for the annuities for Linus and *Page 445 
Florence and the payment of the $2,000 legacy, was to be divided into three funds, one-third for Bertha, one-half for Wallace and one-sixth for Elizabeth. The gift to Elizabeth is in this language: "To my granddaughter, Elizabeth B. Blanchard, I give one part in trust fund account." No provision is made for either the operation or termination of a trust. There is a gift of principal, not of income, and under these circumstances, Elizabeth is entitled to have her share paid to her outright.Supreme Lodge, Knights of Pythias, v. Rutzler, 87 N.J. Eq. 342.
This will not prevent her from sharing in such sums as may later fall into the residue. For instance, at the death of the complainant the principal of the trust established for her benefit is to be divided as provided for the residue; and at the termination of the annuities to Linus and Florence the "principals" of those funds revert to the residue.
No specific time for distribution of the estate is fixed in the will, and therefore the statutory provision that in such cases the executor shall have one year after probate to pay and satisfy the legacies applies. 3 Comp. Stat. p. 3087; In re Brown,112 N.J. Eq. 499. The complainant is entitled to the income on the trust fund from the time at which it should have been established. And complainant cannot charge the estate with the payment of taxes on the real estate, since under the will the estate was liable for these taxes only up to the time of distribution.
It is neither necessary nor appropriate at the present time to determine the validity of the restrictions placed by the testator on the sale of the Prudential stock. If and when the executors find a buyer for the stock at what they consider a fair price, they may petition the proper court for instructions. I will advise a decree in accordance with these conclusions. *Page 446