James S. Coward in his lifetime created two trusts for the benefit of his daughter, Hattie C. Woodruff, the present pertinent language of which is:
"Upon the decease of said beneficiary Hattie C. Woodruff said trust shall cease and determine and said bonds, notes and mortgages or any securities which may have been substituted therefore or the fund representing the principal of said trust and all income accruing thereon thereafter shall revert to said James S. Coward if he should be then living and if he should have predeceased said beneficiary, then, and in that event, upon the decease of said beneficiary the said trust fund and any income accrued or accruing thereon after her *Page 300 
decease shall fall into and become a part of the residuary estate of said James S. Coward to be disposed of according to the provisions of his last will and testament or in default of a will, according to the intestate laws of the place of his domicile."
James S. Coward died on March 11th, 1923, predeceasing his daughter, Hattie C. Woodruff, and by the terms of his will provided:
"Seventeenth: Upon the decease of my daughter Hattie when her interest as beneficiary for and during her natural life in certain mortgages or the proceeds thereof now held or which may be hereafter held by me as trustee for her shall cease and determine, then and in that event I give and bequeath to her three children, Harriet, Ruth and Mary each of them the sum of $500,000.00 out of said trust fund forever.
Eighteenth: All the rest, residue and remainder of my property of which I may die seized or possessed or to which I may be entitled at the time of my decease, including the remainder of said trust fund not otherwise disposed of herein, which shall fall in and become part of my residuary estate upon the death of my daughter Hattie, I give, bequeath and devise to my son John M. Coward, forever."
John M. Coward died on December 9th, 1925, predeceasing the life tenant, and by virtue of the terms of his will, and the will of his wife, Minnie M. Coward, who died on March 30th, 1940, his daughter Miriam Coward Rice succeeds to all rights which he may have had under paragraph eighteenth of James S. Coward's will. She will be referred to as the ultimate remainderman.
Harriet C. Woodruff, life tenant of the trusts, died on September 15th, 1941, naming as her executors her three children referred to in paragraph seventeenth of the will of James S. Coward, and who will here be designated as the immediate remaindermen.
From the accounts of the trustee it would appear that when the trusts were originally created their corpus approximated $2,800,000. During the financially disturbing period following October of 1929 many of the mortgages in the portfolio of the trustee fell into default, were foreclosed, and the trustee now holds some seventy-four parcels of real estate of questionable and varying value, plus certain intangible assets which are more particularly set forth in paragraph ten of *Page 301 
the petition here under consideration. It may be inferred that the corpus, if speedily liquidated, would not retain its original value. No complete distribution of all of the assets in the hands of the trustee is possible until certain exceptions filed to its accounts by the ultimate remaindermen are heard and disposed of, the rights of all parties fully determined and the real estate sold or its value fixed. In the meantime income is accruing on the individual legacies of the petitioners, they are dubious of the arrangements they may be able to make with the Collector of Internal Revenue when this accrued income is received, and they seek a partial distribution of the intangible assets previously referred to, in kind, at their face value, directly to them on account of their individual legacies of $500,000 each, reserving, however, a sum in the hands of the trustee for administration expenses, commissions and counsel fees. This they argue will result in a conservation of thecorpus and excess penalties in the form of taxes.
This court held in Woodruff v. Hudson County National Bank,122 N.J. Eq. 444; affirmed, 123 N.J. Eq. 585, that the estate of Hattie C. Woodruff had an interest in the real estate acquired by the trustee on foreclosure of mortgages on account of income not paid to the life tenant, and said: "Any loss arising as a result of the sale of a foreclosed property for an amount insufficient to restore to corpus and to income the full amount due tocorpus and to income shall be apportioned between the life tenant and the remaindermen in the proportion that the debt at the time of passing title on the sale due the first, bears to the amount of the corpus of the estate, or conversely, the amount realized shall be set apart to the remaindermen and the life tenant in the proportion that the corpus bears to the unpaid interest due the life tenant."
Petitioners, as executrices of the estate of the life tenant have, therefore, in addition to their individual legacies an interest as executrices and beneficiaries under her will.
In support of their contention the petitioners show that all of the debts of James S. Coward have been paid, all estate taxes levied by the federal government have been paid and *Page 302 
all transfer inheritance taxes levied by the State of New Jersey have been paid. They further show that there is no administrator of the estate of James S. Coward now acting and say that under these circumstances a partial distribution can be made directly to them without the medium of a substituted administrator. Vice-Chancellor Buchanan held that distribution directly to the beneficiary can be made in the case of In re Estate of MaggieRiley, 92 N.J. Eq. 567. A substituted administrator in the instant case could only serve as a formal medium in the transfer of the intangible assets to the petitioners, and would subject the same to additional charges and expenses. The transfer of a distributive share of an estate, directly to a beneficiary entitled, without the appointment of an administrator where there are no debts due has been sanctioned by this court as will appear from a reading of the cases of Martin v. Gifford, 101 N.J. Eq. 411; In re Peterson's Estate, 85 N.J. Eq. 135; Trenton Trust Co.
v. Moore, 83 N.J. Eq. 584, and Redmond v. Gummere, 94 N.J. Eq. 216,
wherein the Vice-Chancellors, after establishing that there were no debts, decreed payment directly to the beneficiary found to be entitled to the distributive share.
To withhold a partial distribution at this time and continue the accruing of income might irreparably deplete the corpus of the estate. No harm can come to the ultimate remainderman who, under the James S. Coward will, can take nothing until the petitioners receive their $1,500,000, plus such sums as may be determined and decreed to be due to the life tenant at the time of her death on September 15th, 1941. The rule, as stated in theRestatement of the Law, Trusts, ¶ (e) (at p. 1073) is:
"The Trustee is not necessarily justified however, in withholding the whole of the trust estate from distribution until a final accounting. To the extent that a distribution of a part of the property can be made without risk to the beneficiaries or the trustee, he should make such distribution. Thus, if it is clear that a certain beneficiary is entitled to receive a certain part of the trust estate, the trustee is not justified in withholding such part from distribution merely because the total amount which the beneficiary is entitled to receive has not been ascertained." *Page 303 
It may be well to note that upon the original return of the order to show cause the trustee actively opposed petitioner's application. They have obviously adjusted their differences and appropriate orders have been entered. The sole remaining objectors are the ultimate remaindermen who complain that none of the trustee's accounts have ever been approved or settled and there should be no distribution until this is done. Although the law seems well settled that this is no ground for objection, this court some time ago entered an order referring the exceptions to the trustee's accounts to a special master for hearing and report and as yet no steps have been taken looking to an adjudication of the right and liabilities of the trustee, if any. Further delay would only additionally deplete the corpus. If counsel cannot agree upon a sum to be reserved for expenses by the trustee, the court will fix the same upon presentation of a decree.