20 N.J. Super. 542 (1952)
90 A.2d 119
FEDERAL TRUST COMPANY, A CORPORATION OF NEW JERSEY, AS SURVIVING TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF PHILIP C. WALSH, JR., DECEASED, PLAINTIFF,
v.
MARY E. WALSH, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 23, 1952.
*545 Messrs. Lindabury, Steelman & Lafferty (Mr. William Rowe appearing), attorneys for plaintiff.
Mr. John J. Bracken and Messrs. Crummy & Consodine, attorneys for defendants Mary E. Walsh, et als.
Messrs. Tepper, Tepper and Verney, attorneys for defendant Murray Schwartz as trustee in bankruptcy and assignee of William J. Walsh.
Messrs. McCarter, English & Studer, attorneys for defendant The National Iron Bank as sole surviving trustee, etc.
Messrs. Smith, Slingerland, Trauth & Holtz, attorneys for defendant Walter S. Sheafer, executor of the last will and testament of Paul Sheafer, deceased.
STEIN, J.S.C.
This is an action to construe Article Sixth of the will of Philip C. Walsh, Jr., executed January *546 19, 1916, and on his death, October 28, 1922, admitted to probate November 10, 1922. The plaintiff is the surviving executor and trustee, its co-fiduciary, William H. Walsh, surviving brother of the testator, qualified and continued in office until his death September 12, 1932.
The pertinent portion of the will is as follows:
"SIXTH: All the rest of my estate, real and personal I give, devise and bequeath to my executors upon the following trusts:
(a). Out of the income therefrom, to pay all taxes assessed against any of the property of said estate and against any property belonging to my wife, Mary E. Walsh, to pay all insurance premiums, and make repairs to buildings and generally to maintain any real estate belonging to my estate or belonging to my said wife.
(b). To pay the remainder of the net income to my said wife, Mary E. Walsh, for her life, for the support of herself and our children in monthly installments, with authority to resort to the principal of my estate if the income be insufficient; provided however, that by said resort to principal the yearly payment to my wife shall not be made to exceed twenty-five hundred dollars ($2,500.00). I do not intend to limit my wife to $2,500.00 if the net income available for her and her family shall be greater than that amount, but I mean that if resort to the principal is necessary, it shall only be to such extent as is necessary to swell the net annual income to the sum of $2,500.00. I direct that my said wife be not required to make any accounting of the expenditure of money received by her from the estate under this provision, and that my executors shall be under no responsibility for the use and application of said money by my said wife; provided however, that if my wife shall re-marry, my executors shall supervise the expenditure of said income either through my wife or by taking it into their own hands, and may limit the amount of income to be paid to my wife or expended by them. It being my will that my executors shall determine how much of said income shall be used and how it shall be used in the interests of my said wife and our children.
(c). It is my wish that my sons and daughters shall all receive a good education, and to that end I direct that my executors apply so much of the income from my estate as may be available for that purpose after the reasonable support of my wife and children, and the maintenance of the home for them, to procuring for my sons a college education and for my daughters a boarding school, convent or college course. If any one of my children shall wish additional education to train him or her for some profession or pursuit, and my executors shall approve such plan, I authorize them to pay for such technical or professional instruction, not exceeding for each one of said children the sum of Three thousand dollars ($3,000.00), and the amount so expended for either child, (for technical or professional *547 instruction additional to the collegiate etc. course referred to) to be charged to the share of said child in the division of my estate.
(d). If either of my sons shall marry after reaching the age of twenty-five, and shall leave the family home, or if either of my daughters shall marry after reaching the age of twenty-one, and shall leave the family home, I direct that such son or daughter be thereafter paid the sum of Five hundred dollars ($500.00) a year out of the net income of my estate; subject to the power herein given my executors, in case of the re-marriage of my said wife, to determine and limit the amount of income to be paid to my wife or expended for the benefit of my wife and children, I direct that at no time shall the payment of net income to my wife be reduced by such payments to my children on marriage to less than Fifteen hundred dollars, ($1,500.00) a year, and if said income shall be insufficient to pay my said wife $1,500.00 and the married children who have left home $500.00 a year each, said payments of $500.00 to said children are to abate equally.
(e). Upon the death of my wife, I direct that my estate be divided into as many shares as the number of my children, the child or children of any deceased child to take the share his or her parent would have been entitled to if living. If at the time of the death of my wife any of my said children shall have reached the age of thirty years, I direct the executors to pay over to said child his or her share, and thereafter as each child reaches thirty years to pay over his or her share. The share of any deceased child who left child or children may be paid over by my executors at any time between the death of my wife and the date when the youngest child reaches the age of thirty, as may be most for the convenience of my estate. If however, all my children shall marry before the death of my wife, I direct that my estate be divided as herein directed, without waiting for any child to reach the age of thirty, first setting apart however, enough to assure a net annual income of $1,500.00 a year to my wife, unless my wife shall then be married, in which case my executors are to take into consideration her circumstances and need of support, and if they decide that she can get along comfortably with less than the $1,500.00 above spoken of, they are to set apart such sum as will insure a net annual income of the amount less than $1,500.00 so decided by them to be sufficient for her comfortable support. The corpus thus set apart for her to be divided after my wife's death."
At the date of the will testator was the husband of Mary E. Walsh, and there were four children of the marriage, Philip C. Walsh III, William J. Walsh, Mary Walsh and Ann L. Walsh, all then minors. All of these still survive except Philip C. Walsh III, who died July 30, 1947, leaving four children, Philip C. Walsh IV, Sally Walsh Downing, *548 Frances L. Walsh Lawlor and Mary Ellen Walsh Hough, all of full age. Both sons married in the lifetime of the testator and under the age of 25. The daughter Mary married Ernest F. Gamache after attaining 21 years of age. Her two children, Anne Louise Gamache and Mary Mercier Gamache, are both minors. William J. Walsh's child is William J. Walsh, Jr. Ann L. Walsh did not marry. She is mentally incompetent, and is presently confined in a mental institution.
At the date of the will the family resided at No. 19 Grant Street, Newark, New Jersey, title to which was in Mrs. Walsh. This property was sold during testator's lifetime and a purchase money mortgage for part of the purchase price was taken by Mrs. Walsh. Premises No. 300 Roseville Avenue, Newark, was purchased in Mrs. Walsh's name alone and a purchase money mortgage given for part of the purchase price which mortgage remained unpaid at testator's death. This was the only parcel of real estate to which title was held by the widow at testator's death. There was no real estate of which testator died seized. Upon default in the purchase money mortgage some years after testator's death Mrs. Walsh again became the owner of No. 19 Grant Street for a period during the trust.
On July 20, 1926 Mary E. Walsh, the widow and life beneficiary, Philip C. Walsh III and William J. Walsh, testator's two sons, executed an assignment to The National Iron Bank and Edward J. Storb as trustees of their interests as legatees, devisees, next of kin, heirs at law and beneficiaries in testator's estate.
On November 10, 1933 the interest of Philip C. Walsh III in testator's estate was purchased by Paul Sheafer at a judicial sale under attachment proceedings against Philip C. Walsh III. Paul Sheafer has since died and his son, Walter S. Sheafer, is the executor of his will.
On January 3, 1947 William J. Walsh was adjudicated a bankrupt in the United States District Court for the Southern District of New York, and Murray Schwartz was appointed *549 trustee in bankruptcy in said proceedings. On May 6, 1947 during the pendency of said proceedings William J. Walsh executed to Murray Schwartz as such trustee an assignment of his interest in testator's estate.
Because of the divergence in interest of the parties there is a sharp conflict as to the proper construction of the pertinent parts of testator's will. Counsel in their briefs raised many and varied questions but all may be summarized and disposed of as follows: (I.) What are the trustee's duties under sub-paragraph (a) and what properties are included? (II.) Are testator's sons entitled to share in the income under sub-paragraph (d) having become married prior to reaching 25 years of age? (III.) What interests did testator's children and grandchildren take under sub-paragraph (e)?
Preliminarily, a statement of some of the applicable established rules of construction is appropriate.
It is the general rule in this State that the intention of the testator controls the construction of wills, First Nat. Bank of Toms River v. Levy, 123 N.J. Eq. 21 (Ch. 1938); Crocker v. Crocker, 112 N.J. Eq. 203 (Ch. 1933); Holbrook v. Greene, 125 N.J. Eq. 337 (Ch. 1939); that the will must be read from its four corners and the intent of the testator gathered from the whole document. Murphy v. Murphy, 118 N.J. Eq. 108 (Ch. 1935), affirmed 119 N.J. Eq. 83 (E. & A. 1935); Schaefer v. Gessler, 121 N.J. Eq. 42 (Ch. 1936): Van Nest v. Van Nest, 126 N.J. Eq. 234 (E. & A. 1939). "The duty of the court is to construe the will as written, in the light of the circumstances at the date of its execution, and not to surmise or guess what the testator would have done had he foreseen what would happen after his death and then try to give effect to his supposed wishes." Blanchard v. Blanchard, 116 N.J. Eq. 435 (Ch. 1934) affirmed 122 N.J. Eq. 372 (E. & A. 1937). "If the language is not ambiguous, and the intention is signified by apt words and phraseology, there is no room for construction." Brearley v. Brearley, 9 N.J. Eq. 21 (Ch. 1852): First Nat. Bank of Toms River v. Levy, supra.

*550 I.
What are the trustee's duties under sub-paragraph (a) and what properties are included?
In sub-paragraph (a) testator directs that out of the income the executors are "* * * to pay all taxes assessed against any of the property of said estate and against any property belonging to my wife * * * and generally to maintain any real estate belonging to my estate or belonging to my said wife." On the date of the will and at no time to the date of his death was testator seized of any real property. Title to the premises in which testator and his family lived was in his wife, Mary E. Walsh. Subsequent to his death, his widow acquired title to a parcel of real estate formerly owned by her. It will be noted that in this short paragraph testator in two places directed that the provisions thereof apply to the real estate belonging to his wife as well as to the real estate belonging to his estate. He made no differentiation as to the time when his wife acquired the property. Standing alone, this paragraph may be construed to mean that testator intended its provision to apply to any real estate belonging to his wife during the life of the trust as well as that belonging to her at his death, but when read in conjunction with the next following sub-paragraph (b) which provides "To pay the remainder of the net income to my said wife, Mary E. Walsh, for her life, for the support of herself and our children in monthly installments, with authority to resort to the principal * * * if the income be insufficient * * *," it is apparent that while it appears that it was testator's primary intention to provide for the maintenance of the home, yet his paramount concern was the support of his wife and children. This is manifested by his direction to the trustee to invade the principal if the income is insufficient for this purpose. Conceivably, the acquisition by Mrs. Walsh of many properties would defeat testator's purposes. It is my conclusion that testator intended that this *551 provision refer to the real estate owned by either of them at the time of testator's death.
Specifically the trustee requests that its duties to "* * * make repairs to buildings and generally to maintain any real estate * * *" be defined. It concedes that in addition to the expressed direction to pay taxes and insurance premiums, its duties include "repairs and replacement or renewal of essential functions of the real estate, as reasonably required," as well as the payment of current interest charges on the mortgage encumbrance to which the property was subject at testator's death. It contends however, that such duties do not include maintenance of the grounds nor supervision by it to determine the need for and to initiate repairs and replacements. It appears from a reading of this sub-paragraph of the will that testator intended to relieve his wife of all care of the homestead and place it in the trustee. The care required of the trustee is the same care that would be exercised by a reasonably prudent man in the upkeep of his home. This necessarily includes supervision and periodic inspections to determine the need for repairs and replacements and if such need exists to cause such repairs and replacements to be made. The trustee is also to maintain the grounds. Included in the direction "generally to maintain" is the duty of the trustee to pay interest on the mortgage to which the premises were subject at testator's death. This is in consonance with testator's intention to maintain the home.

II.
Are testator's sons entitled to share in the income under sub-paragraph (d) having become married prior to reaching 25 years of age?
This question must be answered in the negative. The provisions of sub-paragraph (d) created a condition precedent. Testator said, "If either of my sons shall marry after reaching the age of twenty-five, and shall leave the family *552 home" then such son thereafter is to receive the sum of $500 per year. Both sons married during the life of the testator and before they reached the age of 25. "The failure to perform or accomplish a condition required as a condition precedent prevents an estate from vesting in the donee. A bequest upon a condition precedent does not become effective until the condition is performed." Tizard v. Eldredge, 17 N.J. Super. 517 (Ch. Div. 1952). The sons do not claim to be entitled to such income. On the contrary they disclaim such right. It is their assignees who press the claim. To hold as the assignees argue would necessitate rewriting this sub-paragraph. "The function of the court is only to construe the will that testator has made, not to make a will for him." McGill v. Trust Co. of N.J., 94 N.J. Eq. 657 (Ch. 1923), affirmed 96 N.J. Eq. 331 (E. & A. 1924); Stryker v. Sands, 4 N.J. 182 (Sup. Ct. 1950).

III.
What interests did testator's children and grandchildren take under sub-paragraph (e)?
The first sentence of this sub-paragraph reads: "Upon the death of my wife, I direct that my estate be divided into as many shares as the number of my children, the child or children of any deceased child to take the share his or her parent would have been entitled to if living." It is obvious that testator intended by this language to not only divide his estate into as many shares as he had children, but to give one share to each of such children and if any of such children be dead then such share to go to his or her child or children. It is apparent that the scrivener omitted to include in this sentence, words of gift to testator's children but from a reading of the whole paragraph the conclusion is inescapable that such was his intention.
The main controversy arises over when and in whom the remainder vests. Plaintiff-trustee takes the position that the remainder vested in testator's children immediately upon *553 his death subject to being divested upon their death leaving issue prior to the period of distribution, namely, the death of the widow. The assignees argue that the remainder vested absolutely in testator's children upon his death and is not subject to divestment. Testator's children contend that the remainder over to the grandchildren is void for remoteness and therefore the entire gift of the remainder falls so that testator died intestate as to such remainder. They say that sufficient of the estate should be set aside to produce an income of $1500 per year for the widow for life and the balance of the estate be distributed now.
It has long been the rule in this State that a devise of a remainder limited upon a particular precedent estate, determinable on an event which must necessarily happen, will be construed as vesting the remainder estate at the time of the death of the testator unless his will clearly indicates a contrary intention. Post v. Herbert's Executors, 27 N.J. Eq. 540 (E. & A. 1876); Kinkead v. Ryan, 64 N.J. Eq. 454 (Ch. 1903); Redmond v. Gummere, 94 N.J. Eq. 216 (E. & A. 1922); Cody v. Fitzgerald, 2 N.J. 93 (1949). There is nothing in the will here under consideration that would even remotely indicate that testator intended otherwise. However, the vesting in the children at testator's death is subject to another rule, that where the will provides for children to take in substitution upon the death of the parent if the parent dies before the arrival of the distribution period, the share or interest theretofore vested in the parent shall become divested and shall vest in such children. Security Trust Co. v. Lovett, 78 N.J. Eq. 445 (Ch. 1911); Redmond v. Gummere, supra.
The children's contention as to remoteness is expressed in their brief as follows:
"* * * the trustees are empowered to postpone distribution to testator's orphaned grandchildren until the youngest of them reaches thirty. But the number of surviving grandchildren in any such class or classes may not be determined until the youngest reaches thirty, since they acquire their very right to take by reason of survivorship *554 to that time and the share to be vested in each can thus be determined only at that time. But that time was beyond the period of a life in being plus twenty-one years within which vesting of title must occur * * *."
This argument overlooks the fact that reference in the will to age 30 refers to the time of distribution not to vesting. It does not take into consideration that vesting in the grandchildren occurs immediately upon the death of the parent in the lifetime of the life tenant. The number of grandchildren is fixed at that time. Hence there is no violation of the rule against perpetuities. The interests of the children and grandchildren are determined to be as follows: The children of Philip C. Walsh III have a vested interest in one-fourth of the remainder and each of the remaining children of testator have a vested interest in a one-fourth of the remainder, which interest however is subject to divestment upon their death in the lifetime of the life tenant leaving a child or children surviving.
Judgment accordingly.